21-2784 and 22-507. So my plan on these was to go ahead with the consolidated cases first and then sort of play to the pellet, Ms. Buttrick to argue on, well, in my chambers we call it Mitchell 2. But 2978 separately because there's no appearance there, Ms. Buttrick, does that make sense to you to do these separately even though I feel like they might infiltrate each other as we talk? Yes, Your Honor. That was my plan as well. All right. Then it looks like you've reserved three minutes and you can proceed when you're ready. Thank you, Your Honor. And may it please the Court, Alice Buttrick appointed pro bono counsel for plaintiff appellant Daunte Mitchell in this first case which concerns the Mitchell complaint that was dismissed at the summary judgment stage. Summary judgment was not appropriate here because a reasonable jury could have found that the defendants violated Mitchell's rights by improperly denying his application to form an anti-gang organization called UFD without a legitimate pedagogical objective. And that even after Mitchell was released on a grant of clemency, defendants continued to violate his First Amendment rights by censoring his communications about UFD. And I'd like to begin by making clear that this is not a case about whether a prison about a security risk. You will not find in this record undisputed evidence that any of the three defendants here actually believed that UFD posed a security risk, and you will not find undisputed evidence that any of these three defendants were concerned about security risks. What you will find is evidence from which a reasonable jury could infer that these defendants sought to prop up an inactive organization in order to manufacture a reason to deny the UFD application. So there's real evidence of pretext here. There's real evidence from which a jury could have found in Mitchell's favor, and that's It's also sufficient to preclude qualified immunity at this stage, because the underlying facts required to decide the qualified immunity analysis are disputed. Let's talk about the sort of mundane procedural pieces here, which may be significant. So one of them is the mootness question I'm interested in. And I understand that your argument is that the complaint pled in this case adequately encompasses complaints that apply to Mr. Mitchell as a post-release, a non-incarcerated person. But let's start with any injunctive or declaratory relief sought as to sort of Mr. Mitchell as a prisoner, that is moot, right? Sort of like, you have to let me go to UFD meetings as a prisoner, or you can't take engaging in UFD activities. Those things are moot, right? Is the argument that there is a remaining non-moot aspect of this case as to his non-incarcerated individual First Amendment freedoms? That's correct, Your Honor. And the Jana Kiewski case here is instructive. There, like in this case, the petitioner's circumstances changed over the course of the case. He had initially challenged one order, which expired, and subsequently was being affected by another. And this court recognized that if there are still collateral consequences traceable to defendant's conduct that are injuring a plaintiff and that can be redressed by the court, the case is not, or the injunctive relief claims are not moot. And what about the objections to the R&R? Well, respectfully, Your Honor, because Mitchell was proceeding pro se below, we would ask that his objection be construed generously to preserve an objection to the qualified immunity issue as well as the injunctive relief issue. But even if this court is not inclined to agree with that argument, the waiver or the failure to object is not jurisdictional. And, for instance, in the Spence case, this court recognized that even issues that were not preserved by an objection to a magistrate judge recommendation can be considered if the arguments have substantial merit, as Mitchell's arguments do here. Going back to mootness for just a moment, though, the complaint, I know you keep saying that it's captured in the complaint, but it's basically one word in the complaint. At A119, the word without, within and without DOCCS facilities. That seems like a very thin reed in which to ground an argument that he was intending to sue based on his behavior in the prisons as well as outside the prisons. This whole complaint and the litigation centered around his firstman rights as a prisoner. And so in terms of the declaratory and injunctive relief, how is it that he doesn't just need to bring another case as opposed to argue that it's somehow contained in the current complaint? Yes, Your Honor. We don't dispute that Mr. Mitchell's circumstances changed throughout the litigation. At the outset of the litigation, he could not have brought a claim that he had been released. That hadn't happened yet. That being said, there's a meaningful distinction between saying that Mr. Mitchell's injunctive relief claims are moot, which is to say not justiciable, and that they are simply beyond the scope of this action and could be brought in another case. And that distinction matters, as you may be foreshadowing in the Mitchell 2 case. If the district court's erroneous mootness analysis is allowed to stand here, in theory defendants could appear in that case and say, you don't have post-release claims. Those are not justiciable. And respectfully, that would be incorrect under an Article 3 analysis of mootness, where Mitchell is clearly being harmed. His harms are clearly traceable to defendant's conduct and they could be redressed by a court order. Thank you. I'll reserve my remaining time for rebuttal. Thank you, Counsel. All right. Ms. Ettlinger. Good morning, Your Honors. May it please the Court. If I may, I'd like to start with the summary judgment issue itself, because I think that just takes care of the whole case and means the Court doesn't even have to consider the mootness claim. It's our position that this record was very clear and fully supports a determination that on the summary judgment record, the prison officials made a reasonable determination that there were safety and security concerns associated with approving this organization because there was material available that indicated the organization he had founded was associating itself with the New African Independence Movement. And that movement had revolutionary goals, espoused revolutionary means, and espoused violence if needed to reach those goals. That information was enough for the prison officials to be concerned that having this organization within the correctional facility would present safety and security concerns. And I don't think anybody's disputing that safety and security concerns are a valid penological objective. And a few things on that point. The fact plaintiffs argue that there's pretext here because there were other reasons as well that defendants relied on. It is true that defendants noted other reasons for denying the organization. There was a duplicative organization and one of the individuals identified some administrative problems with the application. But the fact that there were additional reasons doesn't mean that the reason, one of the reasons they gave, and they gave this reason from the very first person who recommended disapproval, the second person who recommended disapproval had additional research done to confirm that this was a problem with the organization and specifically wrote a memo noting the ties between the UFD and the New African Independence Movement. And that, and the ultimate decision maker said that he was denying, that he had denied the application because of all the reasons given. So there's really no question that one of the grounds on which defendants denied his application was a valid safety and security concern. And it's also, I would like to point out to the court that while plaintiffs say in their brief, there's no evidence that plaintiffs wrote that blog. I'd like to make two points about that. First, I think what they might be accurately saying is he didn't write the New African Independence Creed. That was something that existed that the UFD materials adopted. So to the extent he didn't write the creed, we wouldn't quibble with that. He takes full responsibility for the organization. He founded it. He submits papers, a guidebook that he's authored. He has never, during the litigation, sought to distance himself from that blog. And in fact, in his amended complaint, in his original complaint and his amended complaint, and I'd like to quote it for the court. He says, until 2016, quote, UFD was associated with the New African Independence Liberation Movements and their ideology of revolutionary New African nationalism. So there's really no question that this was a belief that the organization adopted. He says in the litigation, oh, well, that was only until 2016. So by the time I applied in 2018, you couldn't hold those documents against me. Of course, that argument wasn't made to the prison officials when they were reviewing his application. So when they saw his application and they found information about these revolutionary goals, certainly it wasn't unreasonable for them to think that this raised a safety and security concern. And is your basis for the contention that the New African nationalism or the revolutionary goals of whatever organization he is associating with, the language on A167 referring to giving your life, is it just that phrase? Well, I think it's the language about revolutionary activities without any explanation that revolution meant getting people to vote or something like that. I mean, you acknowledge that revolution doesn't necessarily mean violence. It doesn't in some context, but without any context here and a reference to giving your life, I think it's safe to assume that between those two things, this could be an organization that would encourage people to engage in violence. I think the two things together without any other language to detract from that within the creed. And why isn't that a fact issue? A fact issue that a juror could evaluate whether this organization was, in fact, related to or advocating for violence and whether the prison officials genuinely thought that that was the case as opposed to using it as a pretext for just denying this organization. Well, I don't, on the first thing, I'm not sure it's relevant whether it's accurate that it is a violent organization or not. I think the question is, did the prison officials reasonably believe and understand objectively that this could be violent and therefore it was reasonable for them to deny it on that basis? And I don't, I think if a jury found this wasn't a reason based on this summary judgment record, there's just, there's nothing that questions that this wasn't their reason. I mean, they said expressly, an internet search was conducted per documentation. We found references to the new African Declaration of Independence. It states that a fundamental way to gain power is build a sovereign new African nation. Members will give their lives. I mean, there's, I don't know what else in the record raises a question about whether that was a reason for denying the organization. Well, they certainly said that that was the reason, but the question, I think, is whether that was a pretextual reason. But I'm not seeing what evidence there is to raise a question of pretext. Thank you. And on the mootness, I think what's important to recognize, it's, I think everybody's in agreement. Plaintiff's claims as an incarcerated person to set up an organization at the facility are moot. The way the directive works to set up an organization, you have to be an incarcerated person. You have to make the application yourself, and you have to do that at the specific correctional facility where you are being housed. So there's no basis for granting his application at this point. He's not a prisoner. He can't be the sponsor of the organization. He's not at that facility. So the question is, is there a different claim that a plaintiff has now that is traceable to the complaint in this case? And the answer is no, because what he is really arguing about now is that DOCS has a policy that if an organization is unauthorized, materials related to that organization are generally prohibited or are prohibited under certain circumstances. And that's accurate. That's how the rule works. That's how the directive works. He has never challenged that directive or that rule. He has always challenged the fact that UFD was unauthorized as causing these harms. And he no longer has standing to seek to have UFD authorized. Whether the directive is unfair or violates his constitutional rights, that's a different claim. Perhaps that's what he's alleging in this other lawsuit. But that wasn't what was alleged in this lawsuit. That was never what was litigated in this lawsuit. The question here was always, was UFD improperly denied to operate at Great Meadow Correctional Facility? Unless the Court has any other questions, we'll rest on our brief. All right. Thank you, Counsel. Thank you. Okay. All right. Counsel, I think you've reserved three minutes. And you might have had a few seconds left last time. Thank you, Your Honor. First of all, I'd like to address my friend's first point here, which was to emphasize this blog post as evidence of some kind of security risk. There is no direct evidence that any defendant in this action actually read or relied on that blog post. That's an inference that a jury might be able to draw. But it's not appropriate at the summary judgment stage to draw inferences in the defendant's favor. In addition, in both the briefs and just now in oral argument, defendants suggest that that blog should be considered an accurate representation of UFD. That's an inappropriate hearsay use of that blog post. And below, the post was expressly offered, not for the truth of the matter asserted, but for the effect on the listener. That's at docket 168 at page 5. If these defendants never considered that blog post, it's unclear how it could objectively establish some legitimate penalogical objective. I would also like to point the court towards the defendant's own statements about what motivated their decisions here. Defendant Miller never says, I was motivated by a security concern or a concern that UFD was violent. You can review his contemporaneous written statements at A160. His office's subsequent statements to Mitchell at A179 and A191. And his summary judgment declaration at A442. Defendant McCoy also never says, I thought UFD was a dangerous organization and security risks motivated my decisions. There's no written contemporaneous record of his decision making, and that's at A160. And even his summary judgment declaration, which is totally conclusory and doesn't really move the needle on summary judgment, does not say, we looked at all these reasons, we thought there was a real security risk here, and that's what motivated our decision. So a reasonable jury could find, based on the record here, that the defendants were not motivated by security concerns, but instead by restarting this defunct organization called ACO, which, the record shows, was restarted in response to Mitchell's grievances about his denied application, and that's at A214. Just to briefly address the mootness issue, as I mentioned previously, the question is about whether Mitchell's adjunctive relief claims are beyond the scope of this action is not a jurisdictional question. So it's very important to correct the district court's legal error there. If there is some need for amendment, this court, in the Janakiewski case, says that the appropriate procedure, especially when you have a pro se litigant, as you do here, is to permit that amendment so that a case is not mooted out by changed circumstances beyond a pro se litigant's control. But I thought one of the reasons, going back, thank you for the mootness argument, but also with respect to the summary judgment argument, there was evidence in the record, I thought, and that we'll look for more closely, that it was articulated by one of the defenses. There was a security issue related to this organization, and information provided about why that was a security issue and its association with the new African nationalism. So to be clear, Your Honor, there was another prison employee who articulated some kind of security risk, but this court has been clear, for instance, in the Sabir case, that the penalogical objectives articulated by one official won't be imputed to another, and that these defendants have to come forward with the evidence of what they actually considered under the Turner test. The Salahuddin case has similar language. So certainly, again, a jury could infer that Defendant McCoy or Defendant Miller was influenced by the views of some other official, but none of these defendants have actually said that was the case, and on summary judgment, when there are disputes of fact of that type, summary judgment is not appropriate. All right. Thank you, counsel.